In re LUMBERMENS MUTUAL CASUALTY COMPANY, Relator.

No. 04–0245.

Supreme Court of Texas.

Argued March 30, 2005.

Decided Feb. 3, 2006.

Christopher Tramonte, Tramonte & Associates, Houston, Arthur W. Landry, Plauche' Maselli Landry & Parkerson, LLP, New Orleans, LA, for Relator.

H. Dwayne Newton, Nelson McCormick Hancock & Newton, Houston, TX, Michael H. Bagot,Thomas A. Rayer, Wagner & Bagot, New Orleans, LA, David M. Gunn, Beck, Redden & Secrest, L.L.P., Houston, TX, for Amicus Curiae.

Rosemary T. Snider, Sam Baxter, McKool Smith, P.C., Marshall, TX, R. Keith Jarrett, Thomas P. Diaz, Liskow & Lewis, New Orleans, LA, for Real Party.

Justice O'NEILL delivered the opinion of the Court.

The issue in this case is whether an insurer that posted a $29 million bond to supersede an adverse judgment against its insured may intervene in the insured's appeal to assert a potentially dispositive issue that its insured abandoned in order to settle certain uninsured claims in another pending lawsuit. The court of appeals denied the insurer's motion to intervene, and the insurer petitioned this Court for mandamus relief. We hold that, under the unique facts presented, the court of appeals abused its discretion and, accordingly, conditionally grant the writ of mandamus.

## I. Background

Sonat Exploration Company,[1] the owner of several gas wells in Louisiana, entered

---

**1.** Sonat's successor-in-interest is El Paso Production Company, but we will refer to the company in this opinion as Sonat.

into a Master Service Agreement (MSA) with Cudd Pressure Control, Inc. The agreement provided that Cudd would conduct "snubbing" operations, which involved forcing pipe into Sonat's high-pressure wells during well-servicing procedures. The MSA provided that Cudd and Sonat would defend and indemnify each other for any claims brought by their respective employees. It also contained language that Sonat contends, in a separate lawsuit, required Cudd to provide insurance coverage to Sonat.[2] Lumbermens Mutual Casualty Company was Cudd's excess-liability insurer at the time the parties entered into the MSA.

In 1998, an explosion occurred during snubbing operations at the Otto Cummings No. 2–Alt. well in Louisiana. The explosion killed seven people, including four Cudd employees, and severely injured three others. When Cudd's employees and their families brought wrongful-death and personal-injury lawsuits in Texas against Cudd and Sonat, Cudd refused to indemnify Sonat and Lumbermens did not provide coverage to Sonat. As a result, Sonat filed a cross-claim against Cudd for indemnity, which was severed from the personal-injury suit and constitutes the underlying proceeding here.[3] Sonat also filed a separate breach-of-contract action

against Lumbermens and Cudd, claiming that it was an additional insured under Cudd's policy and, alternatively, that Cudd had breached a contractual obligation to procure insurance covering Sonat.

Sonat eventually settled the personal-injury suits, and the underlying indemnity action proceeded. One of the issues presented was whether Texas or Louisiana law applied to the indemnity claim. The parties contended the issue was potentially dispositive because under Louisiana statutory law the MSA's indemnity provision was void, while under Texas law it was valid. The trial court granted partial summary judgment in Sonat's favor, holding that Texas law applied and Sonat was entitled to indemnity for the damages it had paid to settle the Cudd employees' lawsuits.[4] The case went to trial on damages only, and the jury returned a $20.7 million verdict in Sonat's favor upon which the trial court rendered judgment. Cudd filed a notice of appeal from the trial court's judgment and from "all other ruling[s], orders and judgments rendered against Cudd in this matter." Lumbermens posted the $29 million appellate security, and Sonat has not offered to release Lumbermens from that obligation.

After Cudd perfected its appeal in the indemnity case underlying this mandamus

2. Sonat entered into a similar agreement with Brooks Well Servicing, Inc., which performed well-servicing operations for Sonat. Brooks was a party to the underlying lawsuit; however, Brooks is not a party to this mandamus proceeding, and we need not discuss Brooks's involvement at length to resolve the narrow issue presented. We have accordingly omitted much of the background information involving Brooks.

3. In addition to the Texas indemnity action, two similar declaratory-judgment actions involving the MSAs and their insurance and indemnity provisions were brought in Louisiana, one of which eventually settled and was dismissed. For the same reason we omitted

information about Brooks's involvement in this litigation, we have also omitted procedural history of the two Louisiana cases that is not material to the issue presented here.

4. In the pending Louisiana action brought by Brooks Well Servicing, Inc., the district court concluded, after dismissing Cudd from the suit, that Louisiana law applied to the MSA between Sonat and Brooks and that the insurance and indemnity provisions in the Agreement were void. The Louisiana court of appeals subsequently reinstated the case against Cudd, but there is no decision from a Louisiana appellate court on the choice-of-law issue as to either the Sonat–Brooks MSA or the Sonat–Cudd MSA.

proceeding, Cudd and Sonat entered into a Rule 11 Agreement in the breach-of-contract suit pursuant to which Cudd agreed to forgo any further challenge to the trial court's choice-of-law ruling, and Sonat agreed to nonsuit its pending breach-of-contract claim against Cudd. Two days later, Cudd filed its appellate brief in the indemnity appeal, which did not raise the choice-of-law issue. Sonat then filed a motion to dismiss with prejudice its breach-of-contract claim pursuant to the Rule 11 Agreement, which the trial court granted. Ten weeks after Cudd filed its appellate brief, Lumbermens sought leave to intervene in the court of appeals in order to preserve the choice-of-law issue. The court of appeals denied Lumbermens' motion, and the appeal remains pending in that court.

## II. Standard of Review

■ At the outset, we note that the issue presented has been somewhat miscast. Lumbermens contends the equitable virtual-representation doctrine entitles it to "intervene" on appeal to assert the choice-of-law issue that its insured abandoned. Under that doctrine, a litigant is deemed to be a party if it will be bound by the judgment, its privity of interest appears from the record, and there is an identity of interest between the litigant and a named party to the judgment. *Motor Vehicle Bd. of Tex. v. El Paso Indep. Auto. Dealers Ass'n*, 1 S.W.3d 108, 110 (Tex.1999). Because one who is virtually represented is already deemed to be a party, theoretically it "is not required to intervene in order to appeal." *City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 752 (Tex.2003). However, as a practical matter, one who seeks to invoke the virtual-representation doctrine in or-

der to assert an interest on appeal must take some timely, appropriate action to attain named-party status. *See City of San Benito*, 109 S.W.3d at 755 (noting that unnamed class member invoking doctrine had not been "laying behind the log" by waiting until eve of settlement to intervene); *El Paso Indep. Auto. Dealers Ass'n*, 1 S.W.3d at 110–12 (examining whether party seeking to appeal based on the doctrine had waived its rights); *Cont'l Cas. Co. v. Huizar*, 740 S.W.2d 429, 430 (Tex.1987) (holding that insurer waived right to appeal because it voluntarily paid judgment against insured). In this case, Lumbermens filed a motion to intervene in the court of appeals, a vehicle we consider appropriate to obtain named-party status if Lumbermens meets the requirements necessary to assert the virtual-representation doctrine, and if equitable considerations do not weigh against allowing Lumbermens to participate on appeal.

■ Given the relatively unique procedural posture of this case, it is not surprising that we have not articulated the standard of review by which to measure the court of appeals' denial of Lumbermens' intervention. The parties here assume that an abuse-of-discretion standard governs our review, and we agree. When reviewing a trial court's decision to strike a party's intervention under Rule 60 of the Rules of Civil Procedure,[5] we apply an abuse-of-discretion standard. *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex.1990). And although Rule 60 does not speak to a party's effort to intervene on appeal, we have generally applied an abuse-of-discretion standard when a party seeks mandamus relief from a court of appeals' order limiting appellate rights. *See Rios v. Calhoon*, 889 S.W.2d 257, 258 (Tex.1994); *Nat'l Union Fire Ins.*

---

5. Under Rule 60, "[a]ny party may intervene by filing a pleading, subject to being stricken ... for sufficient cause ...." TEX. R. CIV. P. 60.

*Co. v. Ninth Court of Appeals,* 864 S.W.2d 58, 59 (Tex.1993). Accordingly, we review the court of appeals' decision for abuse of discretion.

### III. Parties' Arguments

■ Lumbermens contends the court of appeals abused its discretion in rejecting Lumbermens' intervention because, as Cudd's insurer and the party that posted the appellate security, Lumbermens is bound by the judgment in the case. Accordingly, Lumbermens claims it is entitled to appeal the trial court's choice-of-law ruling under the doctrine of virtual representation. *See City of San Benito,* 109 S.W.3d at 754–55. Lumbermens acknowledges that our rules of procedure provide no specific mechanism for allowing a party to intervene for the first time on appeal. But Lumbermens maintains that the $29 million bond it posted to secure the underlying judgment and its potential liability for that judgment vest it with an interest protected under the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the due-course-of-law provision of the Texas Constitution. U.S. CONST. amend. XIV, § 1; TEX. CONST. art. I, § 19. Lumbermens further claims it had no cause to intervene before Cudd elected not to contest the trial court's choice-of-law determination on appeal. Until that point, Lumbermens contends, its insured adequately represented Lumbermens' interests.

On the other hand, Sonat claims the court of appeals did not abuse its discretion in denying Lumbermens' intervention. According to Sonat, the virtual-representation doctrine does not entitle Lumbermens to participate in the appeal because there must be an identity of interests between the party claiming the doctrine's benefit (Lumbermens) and a party to the judgment (Cudd), and Lumbermens has expressly acknowledged that its and Cudd's interests have diverged. Sonat further contends Lumbermens has no due-process stake in the appellate proceedings because, if Cudd does not prevail in its appeal, Lumbermens can invoke a noncooperation clause in Cudd's policy to deny coverage and ultimately avoid the judgment. Sonat also contends that, if Lumbermens desired to intervene, it had to do so before the trial court rendered a final judgment and any attempt to intervene on appeal was untimely. And even if intervention on appeal was permissible, Sonat maintains, Lumbermens waited too long to avail itself of that procedure by failing to seek leave until after all the appellate briefing was completed. Finally, Sonat asserts that allowing intervention would be bad public policy because it could complicate virtually all appellate proceedings involving liability insurance by enabling insurers to second-guess their insureds' decisions regarding the appropriate issues to raise on appeal. Such a course, contends Sonat, would be inconsistent with Texas's status as a state that generally does not permit insurers to join in tort actions against their insureds. *See, e.g.,* TEX. R. CIV. P. 38(c) (prohibiting joinder of a liability or indemnity insurance company unless the insurer is liable by statute or contract to the injured person); TEX. R. CIV. P. 51(b) (same).

### IV. Virtual–Representation Requirements

■ Generally, only parties of record may appeal a trial court's judgment. *El Paso Indep. Auto. Dealers Ass'n,* 1 S.W.3d at 110. On a few occasions, though, we have determined that a person or entity who was not a named party in the trial court may pursue an appeal in order to vindicate important rights. In *El Paso Independent Automobile Dealers Ass'n,* for example, we held that the court of appeals erred in dismissing the Motor Ve-

hicle Board's and Attorney General's appeal of a judgment declaring Texas's "Blue Law" unconstitutional. *Id.* at 111. In the underlying case, the El Paso Independent Automobile Dealers Association sued the El Paso District, City, and County Attorneys seeking a declaration that the Blue Law, which made it illegal to sell cars on consecutive weekend days, was unconstitutional. *Id.* at 110. Although the Association's petition did not name the Board or the Attorney General as defendants, the Association served the Attorney General with a copy of its petition in compliance with section 37.006(b) of the Texas Civil Practice and Remedies Code. *Id.* The Attorney General, by letter, declined to participate in the case. Although the local officials filed a general denial, they ultimately concluded that the Blue Law was, in fact, unconstitutional and negotiated a pretrial agreement for findings of fact and conclusions of law in line with that conclusion. *Id.* After the trial court rendered judgment declaring the Blue Law unconstitutional and enjoining its enforcement, the Attorney General and the Board filed post-judgment motions in an attempt to intervene. *Id.* The trial court denied the motions. *Id.* We held that the Attorney General and the Board, who bore statutory-enforcement responsibilities, were entitled to appeal under the virtual-representation doctrine. *Id.* at 110–11. Similarly, in *City of San Benito,* we held that unnamed class members who had contested the fairness of a proposed settlement and attempted to opt out of a class action were entitled to appeal the settlement under the same doctrine. *City of San Benito,* 109 S.W.3d at 755.

In this case, Sonat contends Lumbermens may not invoke the virtual-represen-

tation doctrine's benefit because Lumbermens has acknowledged that its interests and Cudd's have diverged, in that Cudd no longer wishes to contest the trial court's choice-of-law decision. Lumbermens responds that its and Cudd's ultimate aim—to reverse the underlying judgment—remains the same. We agree with Lumbermens. The identity of interest upon which the virtual-representation doctrine in this case turns relates to protecting the funds that the underlying judgment puts at risk. *See Huizar,* 740 S.W.2d at 434 (GONZALEZ, J., dissenting).[6] That different legal theories may be asserted to defend those funds does not defeat the identity of interest between Lumbermens and Cudd that the insuring contract creates and the virtual-representation doctrine protects.

In any event, our decisions in *El Paso Independent Automobile Dealers Ass'n* and *City of San Benito* illustrate that the position of one who relies on the virtual-representation doctrine to appeal and the party that formerly represented its interests will have often, if not always, diverged to some extent by the time the beneficiary of the doctrine invokes it. In *El Paso Automobile Dealers Ass'n,* for example, the interests of the Attorney General and the Motor Vehicle Board in defending the Blue Laws' constitutionality were initially protected by the local attorneys. Not until those attorneys abandoned their defense of the statute did the need arise for the Attorney General and the Board to directly participate in order to protect their interests. Despite the diverging positions of the state and local entities regarding the Blue Law's constitutionality, we held that the Attorney General and the Board were entitled to appeal. 1 S.W.3d at 110–11.

6. Although Justice Gonzalez and Chief Justice Hill expressed their view that the insurer had a right to continue the appeal that its insured abandoned, a majority of the Court did not reach the question after deciding that the insurer had already voluntarily paid the policy proceeds to the plaintiff. *Huizar,* 740 S.W.2d at 430.

And in *City of San Benito,* the interests of the named class representatives who supported the proposed class settlement had clearly diverged from those of the settlement's opponents. *See* 109 S.W.3d at 756. Thus, that Lumbermens' interest in pursuing the choice-of-law issue had diverged from Cudd's by the time Lumbermens filed its intervention motion does not defeat Lumbermens' ability to participate in the appeal pursuant to the virtual-representation doctrine.

Sonat contends Lumbermens should not be allowed to invoke the virtual-representation doctrine because it can ultimately avoid coverage for the judgment by invoking a noncooperation clause in Cudd's policy. But irrespective of any potential coverage dispute between Lumbermens and Cudd, Lumbermens has pledged $29 million to secure the judgment in Sonat's favor. Even if Lumbermens could eventually recoup the amount it has pledged through a potential coverage suit against Cudd, its obligation to pay the underlying judgment to Sonat is immediate and binding in the event Cudd's appeal is unsuccessful.

In this case, neither the fact that Cudd's and Lumbermens' interests in pursuing appeal of the choice-of-law issue have diverged, nor the possibility that Lumbermens could later assert a noncooperation defense against Cudd, prevent Lumbermens from invoking the virtual-representation doctrine. But because the doctrine is equitable, we must determine whether other considerations weigh against applying the doctrine to allow Lumbermens' intervention on appeal. *See Huizar,* 740 S.W.2d at 430 (holding that right to appeal insurer may have had under virtual-representation doctrine was waived by voluntary payment of judgment); *see also Gonzalez v. Banco Cent. Corp.,* 27 F.3d 751, 761 (1st Cir.1994) ("[V]irtual representation is best understood as an equitable theory rather than as a crisp rule with sharp corners and clear factual predicates … such that a party's status as a virtual representative of a nonparty must be determined on a case-by-case basis." (citation omitted)); *Tyus v. Schoemehl,* 93 F.3d 449, 455 (8th Cir.1996); *see City of San Benito,* 109 S.W.3d at 756 (emphasizing that intervening class members had preserved appellate rights by attempting to opt out of class and objecting to settlement).

## V. Timing Considerations

### A. Post-judgment Action

 Sonat contends that, even if Lumbermens had a right to participate on appeal, the court of appeals did not abuse its discretion in denying Lumbermens' intervention because Lumbermens only attempted to do so after the trial court's judgment became final. Ordinarily, a trial court does not abuse its discretion by denying a motion to intervene after the court has rendered a final judgment. *Comal County Rural High Sch. Dist. No. 705 v. Nelson,* 158 Tex. 564, 314 S.W.2d 956, 957 (1958). But our decisions in *City of San Benito* and *El Paso Independent Automobile Dealers Ass'n* demonstrate that one who has been virtually represented may be entitled to invoke a right of participation as a named party after judgment has been rendered. Those decisions stem from our recognition that " '[t]o hold otherwise would deprive nonnamed [parties who will be bound by a judgment] of the power to preserve their own interests.' " *City of San Benito,* 109 S.W.3d at 754 (quoting *Devlin v. Scardelletti,* 536 U.S. 1, 10, 122 S.Ct. 2005, 153 L.Ed.2d 27 (2002)); *see also United Airlines, Inc. v. McDonald,* 432 U.S. 385, 395–96, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977) (holding that member of putative class was entitled to intervene to appeal denial of class certification after

trial court rendered final judgment incorporating named plaintiffs' settlement with defendant); *Ross v. Marshall,* 426 F.3d 745, 761 (5th Cir.2005) (holding that insurer that correctly anticipated its insured would drop its appeal was entitled to intervene to appeal adverse judgment against insured). It is true that, because virtual representation is an equitable doctrine, other factors may weigh against allowing intervention after final judgment has been rendered. While other equitable factors may weigh against allowing a virtually-represented party to invoke appellate rights, the mere fact that the party does not attempt to invoke those rights until after judgment, when the need to invoke them arose, is not dispositive.

### B. Timeliness

■ Sonat argues that Lumbermens is not entitled to intervene because it did not attempt to do so until after Cudd filed its reply brief in the court of appeals, ten weeks after Sonat nonsuited its breach-of-contract claims and Cudd failed to raise the choice-of-law issue in its initial appellate brief. We have never articulated a particular standard for evaluating the timeliness of a virtually-represented party's effort to invoke appellate rights. But we find useful the test that the Fifth Circuit has recently articulated for evaluating the timeliness of a motion to intervene as of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure.[7] Considerations under that test are (1) the length of time during which the would-be intervenor should have known of its interest in the

case before attempting to intervene; (2) the extent of prejudice that the existing parties may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it actually knew or should have known of its interest in the case; (3) the extent of prejudice the would-be intervenor would suffer if intervention is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely. *Ross,* 426 F.3d at 754. These factors "give structure to [the] timeliness analysis, [but the analysis] remains 'contextual' and should not be used as a 'tool of retribution to punish the tardy would-be intervenor, but rather [should serve as] a guard against prejudicing the original parties ....' " *Id.* (quoting *Sierra Club v. Espy,* 18 F.3d 1202, 1205 (5th Cir.1994)).

■ The first factor " 'focuses on the time lapse between the applicant's receipt of actual or constructive knowledge of his interest in the litigation and the filing of his motion for intervention.' " *Id.* at 754 (quoting *Edwards v. City of Houston,* 78 F.3d 983, 1000 (5th Cir.1996)). The " 'critical inquiry ... is whether in view of all the circumstances the intervenor acted promptly' " to protect its interests. *Id.* at 755 (quoting *United Airlines,* 432 U.S. at 395–96, 97 S.Ct. 2464). When, as here, a would-be intervenor's interests have been represented by a named party, promptness is measured from the point that " 'it became clear ... that [the would-be intervenor's] interests ... would no longer be represented by [the named party].' " *Id.*

---

7. The federal rule mandates that intervention be allowed if an applicant timely seeks to intervene and the party "claims an interest relating to the property or transaction which is the subject of [an] action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest

unless the applicant's interest is adequately represented by existing parties." FED. R. CIV. P. 24(a). The Fifth Circuit's timeliness test seems appropriate here because Lumbermens will be bound by any judgment against Cudd, and Cudd no longer represents its interest in pursuing the choice-of-law issue.

(quoting *United Airlines*, 432 U.S. at 394, 97 S.Ct. 2464). In *United Airlines*, an unnamed putative classmember sought to intervene in order to appeal the denial of class certification, and did so within three weeks of the date the named classmembers' settlement was incorporated into a final judgment. *United Airlines*, 432 U.S. at 390, 97 S.Ct. 2464.

In this case, ten weeks elapsed between the time Lumbermens became aware that Cudd would not pursue the choice-of-law ruling and the time Lumbermens filed its motion to intervene. Lumbermens explains this delay by pointing to the novel posture of this case and the uncertainty created by the lack of any specific rule providing for intervention on appeal. In evaluating the reasonableness of an appellant's explanation of delay in perfecting an appeal, we have given weight to the fact that the underlying procedural rules were unclear. *See Hone v. Hanafin*, 104 S.W.3d 884, 888 (Tex.2003). In *Hanafin*, the appellants failed to timely file notice of an accelerated appeal based on their belief that their request for findings of fact and conclusions of law had extended the deadline. We noted that courts and scholars disagreed about whether filing such a request extended the deadline for perfecting an appeal, and that our appellate rules did not clearly state that doing so would not extend the deadline. *Id.* Consequently, we held that the appellants had reasonably explained their failure to timely file their notice of appeal. *Id.* While it would have been preferable for Lumbermens to have acted more promptly in light of Sonat's nonsuit in the breach-of-contract case, we agree that under the circumstances of this case, Lumbermens did not wait an inexcusably long period of time to attempt to invoke appellate rights under the virtual-representation doctrine after it became aware that Cudd would not pursue the choice-of-law issue on appeal.

■ The second factor in the Fifth Circuit's timeliness test is the extent of prejudice that the existing parties may suffer as a result of the applicant's failure to apply for intervention at an earlier time; this factor " 'is concerned only with the prejudice caused by the applicants' delay, not that prejudice which may result if intervention is allowed.' " *Ross*, 426 F.3d at 755 (quoting *Edwards*, 78 F.3d at 1002). Sonat contends it was prejudiced by Lumbermens' delay because Lumbermens seeks to raise issues that were not raised in Cudd's initial appellant's brief, effectively contravening Rule 38.1(e) of the Rules of Appellate Procedure. But until Cudd filed a brief that omitted the choice-of-law issue, Lumbermens had no cause to attempt to intervene. Sonat further argues, though, that it will suffer prejudice because it has already filed its responsive brief. However, Rule 38.7 of our appellate rules empower the courts of appeals to allow parties to amend or supplement their briefs whenever justice requires. TEX. R. APP. P. 38.7. If Lumbermens is permitted to raise the choice-of-law issue based on the virtual-representation doctrine, then justice would surely require that Sonat be permitted to respond.

The third factor the Fifth Circuit considers is the extent of prejudice the applicant would suffer if intervention is not permitted. *Ross*, 426 F.3d at 754. It is undisputed that the choice-of-law issue is potentially dispositive. Although Lumbermens invites us to decide the choice-of-law issue, we make no judgment regarding the issue's merits. But if the trial court erred in its choice-of-law decision and the judgment stands despite that error, then the prejudice to Lumbermens is obvious and severe. " '[I]t is essential to our system of justice, that litigants should have their day in court.' " *United Airlines*, 432 U.S. at

395 n. 16, 97 S.Ct. 2464 (quoting *Am. Brake Shoe & Foundry Co. v. Interborough Rapid Transit Co.*, 3 F.R.D. 162, 164 (S.D.N.Y.1942)); *see also Verburgt v. Dorner*, 959 S.W.2d 615, 616–17 (Tex.1997) (disfavoring disposition of appeals based upon harmless procedural defects); TEX. R. CIV. P. 1 ("The proper objective of rules of civil procedure is to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of *substantive* law") (emphasis added).

The fourth factor the Fifth Circuit considers is "the existence of unusual circumstances militating either for or against a determination that the application is timely." *Ross*, 426 F.3d at 754. To some extent, the fact that Sonat nonsuited its breach-of-contract claims against Cudd with prejudice militates against finding that Lumbermens' effort to intervene in this case was timely.[8] But in several of the cases we have cited, a virtually-represented party was allowed to appeal despite the fact that the opposing party had negotiated a settlement with the virtual representative. In *Ross*, the plaintiff had negotiated an agreement with the insured under which *no* appeal of the underlying judgment would have ensued if the Fifth Circuit had not permitted the insurer's intervention. Moreover, if Lumbermens is not permitted to intervene and the choice-of-law issue is meritorious, Cudd will have essentially foisted liability for uninsured claims onto its insurer. *Cf. State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 713 (Tex.1996) (invalidating assignment of bad faith claims on public policy grounds when insured abandoned its natural position in order to take advantage of insurer).

In light of the novel posture of this case, the extent of likely prejudice to Lumbermens if it is not allowed to raise the choice-of-law issue its insured abandoned, and the unlikelihood of prejudice to Sonat resulting from the timing of Lumbermens' effort to invoke appellate rights, we conclude that the timing of Lumbermens' motion does not prevent its intervention.

## C. Public Policy

■ Sonat argues that if Lumbermens is permitted to appeal in this case, then all insurers, indemnitors, and other similarly-situated parties will be entitled to intervene on appeal, potentially interfering with insureds' appellate strategy or raising issues contrary to their insureds' interests or colluding with their insureds to expand briefing schedules or page limitations. We note that analogous concerns arguably exist when an insurer intervenes in the trial court, and Sonat seems to agree that Lumbermens would have been entitled to intervene in the trial court if Cudd had opted not to pursue the choice-of-law issue there. Nevertheless, we agree that every disagreement between an insured and its liability insurer would not justify separate appeals. As we recently acknowledged, the insurance policy determines whether an insurer or its insured has the right to control litigation, a contract right that would be defeated if every disagreement between the two justified each in filing its own appeal. *See Northern County Mut. Ins. Co. v. Davalos*, 140 S.W.3d 685, 688–89 (Tex.2004)., However, our procedural rules favor the resolution of cases based upon substantive principles. *Verburgt*, 959 S.W.2d at 616–17; TEX. R. CIV. P. 1 We

---

**8.** We note, however, that the trial court has ruled that Sonat is in fact an additional insured under Cudd's policy with Lumbermens. As we understand the proceedings in the breach-of-contract case, that ruling, if it remains undisturbed, would essentially moot Sonat's contractual claims against Cudd and result in no harm to Sonat from the dismissal.

reiterate that whether a would-be intervenor is entitled to appeal under the virtual-representation doctrine is an equitable determination that must be decided on a case-by-case basis. Our decision today is limited to the situation presented.

## VI. Conclusion

We hold that under the unusual circumstances this case presents, Lumbermens is entitled to invoke the virtual-representation doctrine to raise on appeal the choice-of-law issue its insured abandoned in order to settle uninsured claims in another suit, and the court of appeals abused its discretion in holding otherwise. Accordingly, we conditionally grant the writ of mandamus and direct the court of appeals to permit Lumbermens' participation to contest the trial court's choice-of-law ruling. The writ will issue only if the court fails to do so.