# IN THE SUPREME COURT OF TEXAS

═══════════════
NO. 11-0114
═══════════════

STATE OF TEXAS, PETITIONER,

v.

ANGELIQUE NAYLOR AND SABINA DALY, RESPONDENTS

═══════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS
═══════════════════════════════════════════

*- consolidated with -*

═══════════════
NO. 11-0222
═══════════════

IN RE STATE OF TEXAS, RELATOR

═══════════════════════════════════════════
ON PETITION FOR WRIT OF MANDAMUS
═══════════════════════════════════════════

JUSTICE BOYD, concurring.

I join the Court's opinion and judgment, and particularly its conclusion that we cannot rely on equity to create standing for the State on appeal. But more importantly, I write separately to emphasize a point on which everyone agrees: the State of Texas is not bound by the divorce decree at issue in this case.

The underlying issues are critically important, but I agree with the Court that we cannot reach them because the State lacks standing to pursue this appeal. Although the State enjoys unique

immunities, it "is subject to [procedural rules] as any other litigant." *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 301 (Tex. 1976). One such rule—"an elementary principle, which has come down to us from the earliest days of the common law"—provides that only those with a justiciable interest in a trial court's judgment have standing to appeal:

> It was decided by this court, as long ago as the case of *Smith v. Gerlach*, 2 Tex., 424, and has never been since questioned, "that this writ [of error] can only issue at the instance of a party to the suit, or of one whose privity of estate, title, or interest appears from the record of the cause in the court below, or who may be the legal representative of such party."

*Wood v. Yarbrough*, 41 Tex. 540, 542 (1874) (quoting *Smith v. Gerlach*, 2 Tex. 424, 426 (1847)).

The State was not a party to this suit. Although it attempted to intervene after the trial court rendered judgment, a post-judgment petition in intervention is ineffective unless the trial court sets aside its judgment. *First Alief Bank v. White*, 682 S.W.2d 251, 252 (Tex. 1984) (per curiam); *see also Dunn v. Dunn*, 439 S.W.2d 830, 831–33 (Tex. 1969) (explaining that court renders final judgment when it orally announces its decision to grant divorce). Here, the trial court did not set aside its judgment, and the State never asked it to. Nor can the State appeal under the virtual representation doctrine because, as all parties agree, (1) the State is not bound by the judgment, (2) there is no privity of interest reflected in the record, and (3) there is no identity of interest between the State and any party to the judgment. *Motor Vehicle Bd. of Tex. Dep't of Transp. v. El Paso Indep. Auto. Dealers Ass'n, Inc.*, 1 S.W.3d 108, 110 (Tex. 1999). And finally, the State is not the legal representative of anyone who was a party in the trial court.

"Subject matter jurisdiction is essential to the authority of a court to decide a case," and "[s]tanding is implicit in the concept of subject matter jurisdiction." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). "An opinion issued in a case brought by a party without standing is advisory because rather than remedying an actual or imminent harm, the judgment addresses only a hypothetical injury." *Id.* at 444. We "have no jurisdiction to render such

2

opinions." *Id.* Courts cannot presume or create standing and jurisdiction, even for equitable reasons. In his dissent, JUSTICE WILLETT correctly notes that we have recently referred to virtual representation as an "equitable" doctrine. *See post* at ___ (Willett, J., dissenting) (citing *In re Lumbermens Mut. Cas. Co.*, 184 S.W.3d 718, 722 (Tex. 2006)).[1] But the Court has it right: the role of equity in this arena is to *limit* the right to appeal when a non-party has standing under the virtual representation doctrine, not to *create* a right to appeal when the non-party lacks standing. A non-party who meets the requirements of virtual representation has standing as one who is "deemed to be a party" and "entitled" to appeal because it has a justiciable interest in and is bound by the judgment. *In re Lumbermens*, 184 S.W.3d at 722–23; *see also City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 755 (2003) ("[T]he most important consideration is whether the appellant is bound by the judgment.").

We have never said, as JUSTICE WILLETT asserts, that a non-party can appeal even if it does not meet the requirements of virtual representation. When we quoted the First Circuit's observation that the doctrine is not "a crisp rule with sharp corners" and must be applied on a case-by-case basis, *see In re Lumbermens*, 184 S.W.3d at 725 (quoting *Gonzalez v. Banco Cent. Corp.*, 27 F.3d 751, 761 (1st Cir. 1994)), we did so to support our explanation that, "because the doctrine is equitable, we must determine whether other considerations *weigh against* applying the doctrine to

---

[1] Our reference to virtual representation as an "equitable" doctrine appears to be a recent development. Neither *El Paso* nor any of the cases on which we relied in *El Paso*—or even on which any of those cases relied— ever use the word "equity" or "equitable" to describe the virtual representation doctrine. *See, e.g.*, *El Paso*, 1 S.W.3d at 110 (discussing virtual representation doctrine while making no reference to "equity" or "equitable"); *Robertson v. Blackwell Zinc Co.*, 390 S.W.2d 472, 472 (Tex. 1965) (same); *Gunn v. Cavanaugh*, 391 S.W.2d 723, 724 (Tex. 1965) (same); *Wood*, 41 Tex. at 542 (same); *Smith*, 2 Tex. at 426 (same). We used the word "equitable" once in *Gunn*, but did so to describe the non-party's proper remedy, *as opposed to* an appeal. *Gunn*, 391 S.W.2d at 724 (explaining that non-party's "proper remedy is by way of an equitable proceeding in the nature of a trial court bill of review," and not by appeal). The only instance in which our earlier cases refer to the doctrine as "equitable" was in a dissenting opinion. *Cont'l Cas. Co. v. Huizar*, 740 S.W.2d 429, 433 (Tex. 1987) (Gonzalez, J., dissenting) (referring to "the equitable doctrine of virtual representation").

allow Lumbermens' intervention on appeal." *Id.* (emphasis added). A non-party appellant must meet the requirements of the virtual representation doctrine, but even when it does, equity may limit its right to appeal. *Id.* at 722 (party who "meets the requirements" may "assert the virtual-representation doctrine . . . if equitable considerations do not weigh against allowing [it] to participate on appeal"); *id.* at 726 ("equitable factors may weigh against allowing a virtually-represented party to invoke appellate rights"); *see also Tex. Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 36 (Tex. 2008) (party who meets requirements "can intervene even after judgment or on appeal so long as there is neither unnecessary delay nor prejudice to the existing parties").

Just as a non-party who seeks to intervene before judgment must have a justiciable interest and standing, *see Mendez v. Brewer*, 626 S.W.2d 498, 499, 500 (Tex. 1982) ("The intervenor bears the burden to show a justiciable interest" and "standing to intervene"), so must a non-party who seeks to appeal post-judgment. Whether pre-judgment or post-judgment, it is not true, as JUSTICE WILLETT's dissent asserts, that "[i]ntervention is an equitable doctrine" under which judges can "simply balance the equities differently." *Post* at ___. The intervenor must have a justiciable interest, but even then equity may justify a denial of their intervention in a given case. Here, because the State was not a party or representative of a party and cannot be deemed a party under the virtual representation doctrine, it lacks standing to pursue its appeal, and no amount of equity can overcome that barrier.[2]

---

[2] I also agree with the Court that we must deny the State's alternative petition for writ of mandamus. As Justice Willett notes, we have stated that a person "need not be a party to the underlying litigation in order to seek mandamus relief." *Post* at ___ (quoting *Terrazas v. Ramirez*, 829 S.W.2d 712, 723 (Tex. 1991)). But we made that statement immediately after stating that, "[t]o be entitled to mandamus, relators must have a justiciable interest in the underlying controversy." *Terrazas*, 829 S.W.2d at 723. We allowed the relators to pursue mandamus in that "most unusual . . . procedural quagmire" even though they were not parties in the trial court, *id.* at 725, but only because they, "as registered voters," had "a justiciable interest" in the case, *id.* at 723. Setting aside the concerns about the State's failure to seek such relief in the court of appeals, we can only grant mandamus when the trial court abuses its discretion or violates a clear duty under the law. *State v. Walker*, 679 S.W.2d 484, 485 (Tex. 1984). For the reasons

But the State lacks standing to appeal because it was not a party, it shared no privity or interest with any party, and the trial court's judgment is not binding on it. The virtual representation doctrine does not apply here precisely because the judgment is not binding on the State. *City of San Benito*, 109 S.W.3d at 755 (agreeing that "the most important consideration" when deciding whether the virtual representation doctrine applies "is whether the appellant is bound by the judgment"). We cannot overlook the effect of this reality. As a non-party who is not bound by the judgment, the State has no obligation to give any effect to the trial court's divorce decree. In fact, it may be, as the State contends, that our laws *prohibit* the State and all of its agencies and political subdivisions from giving any effect to the decree. However controversial and fluid these social issues may currently be, the Texas Constitution still provides that "[m]arriage in this state shall consist only of the union of one man and one woman," and "[t]his state or a political subdivision of this state may not create or recognize any legal status identical or similar to marriage." TEX. CONST. art. I, § 32. And Texas statutes still provide that "[a] marriage between persons of the same sex . . . is contrary to the public policy of this state and is void in this state," and "[t]he state or an agency or political subdivision of the state may not give effect to" a:

(1)    public act, record, or judicial proceeding that creates, recognizes, or validates a marriage between persons of the same sex or a civil union in this state or in any other jurisdiction; or

(2)    right or claim to any legal protection, benefit, or responsibility asserted as a result of a marriage between persons of the same sex or a civil union in this state or in any other jurisdiction.

TEX. FAM. CODE § 6.204(b), (c).

---

the Court explains, I cannot conclude that the trial court abused its discretion by refusing to permit the State's late-filed plea in intervention.

The State has argued that these provisions prohibit Texas courts from granting a divorce to a same-sex couple that was married in another state because only married couples can get divorced in Texas, and these provisions prohibit courts from recognizing same-sex couples as being married. Naylor counters that courts can grant divorces without recognizing the validity of or giving effect to the marriage, and in any event, the Texas Constitution and statute are void because they violate the federal constitution. The State finds support for its arguments in the Dallas court of appeals' decision in *In re Marriage of J.B. & H.B.*, 326 S.W.3d 654 (Tex. App.—Dallas 2010), *cause dism'd* (June 19, 2015). That court held that (1) "[t]he Texas Constitution and section 6.204 . . . forbid the State and its agencies from giving *any effect whatsoever* to a same-sex marriage" and thus "preclude[] a trial court from giving any legal effect to [a same-sex] petition for divorce," (2) "neither comity nor the place-of-celebration rule overcome the jurisdictional bar of section 6.204(c)(2)," and (3) "Texas's laws providing that its courts have no subject-matter jurisdiction to adjudicate a petition for divorce by a party to a same-sex marriage do not violate the Equal Protection Clause of the Fourteenth Amendment." *Id.* at 665–66, 669, 681. Today, we have dismissed *J.B. & H.B.* as moot, because one of the parties died after the petition was filed. Because the State lacks standing to appeal here, we lack jurisdiction to address these issues, which leaves the Dallas court's opinion as the only currently existing Texas law on these issues.

Although we cannot address the issues here, what we can do and have done is confirm that, as the parties agree, the trial court's divorce decree in this case is not binding on the State. As a non-party to this litigation, the State is not required to recognize the validity of this (or any other) same-sex divorce decree, and the Constitution and Family Code may in fact prohibit the State and its agencies and political subdivisions from doing so. If the State's arguments are correct, then

6

under Texas law Naylor and Daly are neither married nor divorced, and neither the State nor any agency or political subdivision can treat them otherwise.

Of course, we may have the opportunity in a future case to address these arguments. And as JUSTICE WILLETT notes, the United States Supreme Court may resolve Naylor's federal constitutional arguments before we have that opportunity. *See post* at __ n.1. But unless and until a court with proper jurisdiction announces otherwise, the trial court's judgment in this case is not binding on the State.

 

 

 

_____
Jeffrey S. Boyd
Justice

Opinion delivered:  June 19, 2015