

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-20-00008-CV

Dennis R. **CAHILL**,
Appellant

v.

Shirley A. **JONES-CAHILL**,
Appellee

From the 451st Judicial District Court, Kendall County, Texas
Trial Court No. 18-236
Honorable Kirsten Cohoon, Judge Presiding

Opinion by:     Irene Rios, Justice

Sitting:     Rebeca C. Martinez, Chief Justice
             Patricia O. Alvarez, Justice
             Irene Rios, Justice

Delivered and Filed: January 13, 2021

AFFIRMED

In this arbitration dispute, the trial court confirmed the arbitrator's decision and denied appellant Dennis R. Cahill's motion to vacate the decision. Cahill appealed. On appeal, appellee Shirley A. Jones-Cahill filed a brief, and her former trial counsel, Olga Brown, filed an "Intervenor's Brief in Support of Arbitral Award." Cahill filed a motion to strike Brown's brief, which we carried with the appeal. We now grant Cahill's motion to strike Brown's brief and affirm the trial court's order.

BACKGROUND

Cahill and Jones-Cahill signed a premarital agreement prior to their marriage in 2012. By this agreement, the parties altered their marital property rights and provided for a division of property in the event of divorce. The premarital agreement contains an arbitration provision, which provides: "The parties agree to submit to binding arbitration any dispute or controversy regarding the validity, interpretation, or enforceability of this agreement, as well as all issues involving its enforcement in connection with a dissolution proceeding between the parties."

In 2018 Cahill filed for divorce. Jones-Cahill filed a counter-petition for divorce, alleging that the premarital agreement is invalid and unenforceable. She also asserted causes of action, including promissory estoppel and fraud claims. Cahill filed a motion to compel arbitration, which Jones-Cahill initially opposed; however, the parties reached an agreement that the case would be referred to binding arbitration if the case was unable to be tried before a specific judge on a specific date. Pursuant to the parties' agreement, the trial court entered an "Agreed Order of Referral to Arbitration." The order states: "IT IS ORDERED that in the event the Honorable William R. Palmer, Jr. is unable to conduct the final bench trial of this case on December 12, 2018, this case shall be submitted to binding arbitration prior to January 31, 2019." The parties then proceeded to a five-day arbitration after the specified judge was unable to conduct a trial on the specified date.

After the arbitration proceeding, the arbitrator delivered a decision that stated the property awarded to Cahill and the property awarded to Jones-Cahill. The decision also required Cahill to make capital-account adjustments and the payment of income from mineral interests related to a limited partnership that Cahill has a controlling interest in and that Jones-Cahill has a minority interest in. In addition, the arbitrator apportioned the partnership's debt. After the arbitrator rendered its decision, Cahill filed a motion to vacate the arbitrator's decision in the trial court,

arguing that the decision should be vacated as to the provisions relating to capital-account adjustments, the payment of mineral interest income, and the apportionment of partnership debt. The trial court denied Cahill's motion and confirmed the arbitrator's decision. Cahill then filed this interlocutory appeal.

## MOTION TO STRIKE

Cahill and Jones-Cahill—each represented by appellate counsel—filed briefs on appeal. Among other things, Jones-Cahill argues that Cahill has not shown that the arbitrator's decision addressed or awarded relief beyond the bounds of interpreting and enforcing the premarital agreement. Jones-Cahill centers her argument on the arbitrator's authority stated in the premarital agreement. Brown, however, who was Jones-Cahill's trial counsel and who has since withdrawn, filed an "Intervenor's Brief in Support of Arbitral Award," in which she asserts alternative grounds for affirmance to those given by Jones-Cahill. In general, Brown argues that the "Agreed Order of Referral to Arbitration" and a 2019 arbitration agreement, which the parties signed just prior to arbitration, expanded the scope of arbitral matters beyond those agreed to in the premarital agreement. Cahill moved to strike Brown's brief, and we carried the motion with the appeal.

We now grant Cahill's motion and order Brown's brief stricken. The record before us indicates Brown did not intervene in the trial court prior to the trial court signing the order appealed from and Brown does not have grounds to intervene on appeal. Accordingly, we do not consider Brown's alternative arguments for affirmance.[1]

Here, Brown did not intervene in the trial court prior to the entry of the order appealed from, and the trial court has not set aside that order. Under these circumstances, Brown is not a named party to this appeal. "[O]ur common law dictates that a party may not intervene post-

---

[1] We also carried Brown's motion to file a sur-reply in support of her brief, which we now deny.

judgment unless the trial court first sets aside the judgment." *State v. Naylor*, 466 S.W.3d 783, 788 (Tex. 2015). When orders, rather than judgments are appealed, we have held that an intervention made after orders were entered was ineffective. *See In re Guardianship of Thrash*, No. 04-19-00104-CV, 2019 WL 6499225, at *4 (Tex. App.—San Antonio Dec. 4, 2019, pet. denied) (dismissing appeal because the appellant was not a party of record in the trial court prior to the signing of the challenged orders). Appellate Rule 25.1(b) is in accordance with the common law; the Rule grants us jurisdiction over the parties to the judgment or order appealed from. *See* TEX. R. APP. P. 25.1(b) ("The filing of a notice of appeal by any party invokes the appellate court's jurisdiction over all parties to the trial court's judgment or order appealed from."). Therefore, under the common law and our rules, Brown is not a party to this appeal because she did not intervene prior to the trial court's entry of the order appealed from. *See id.*; *Naylor*, 466 S.W.3d at 788; *Thrash*, 2019 WL 6499225, at *4; *see also Salinas v. Dimas*, 310 S.W.3d 106, 112 (Tex. App.—Corpus Christi-Edinburg 2010, pet. denied) (granting an attorney's motion to dismiss after the appellant listed the attorney as an appellee because the attorney was not a party to the order appealed from); *Tex. State Tech. Coll. v. Cressman*, 172 S.W.3d 61, 64 (Tex. App.—Waco 2005, pet. denied) (concluding appeal brought by an entity that was not a party to the summary judgment motion presented nothing for appellate review).[2]

Brown argues that her brief should stand because she satisfies the equitable principles for virtual representation. "On a few occasions" the Texas Supreme Court has "determined that a person or entity who was not a named party in the trial court may pursue an appeal in order to vindicate important rights" under the doctrine of virtual representation. *In re Lumbermens Mut. Cas. Co.*, 184 S.W.3d 718, 723 (Tex. 2006) (original proceeding). In *Lumbermens*, the court

---

[2] As a non-party, Brown is also not an "appellee" under our rules which define "appellee" as "a *party* adverse to an appellant." TEX. R. APP. P. 3.1(c) (emphasis added).

applied the doctrine to allow an insurer, who posted a bond to supersede an adverse judgment against its insured, the right to intervene as an appellee in the insured's appeal in order to assert a potentially dispositive issue that the insured had abandoned.  *See id.* at 720.[3]  Under the virtual-representation doctrine, "a litigant is deemed to be a party if it will be bound by the judgment, its privity of interest appears from the record, and there is an identity of interest between the litigant and a named party to the judgment."  *Id.* at 722.  In addition, the litigant seeking named-party status must satisfy equitable considerations.  *Id.* at 725.

Here, Brown neglects to argue or show that she will be bound by the trial court's order confirming the arbitrator's decision.  *See id.* at 722.  The arbitrator's decision does not award attorney's fees to Brown, does not compel Brown to act, and does not impose potential liability on Brown.  Brown asserts that she intervened to secure the payment of attorney's fees purportedly owed to her.  While Brown avers that she is entitled to fees by virtue of her representation agreement with Jones-Cahill, which allows for payment from the arbitrator's award through an endorsement agreement, this indirect connection does not bind Brown, in the same way the insurer in *Lumbermens* was bound by its supersedeas bond.  *See id.* at 729 (holding an insurer that posted a supersedeas bond and was potentially liable for a judgment was bound by that judgment and could obtain the status of a named-party under the virtual-representation doctrine).  Brown has presented no legal authority suggesting that she is bound by the trial court's order or the arbitrator's decision, and without argument or authority on this point, Brown cannot attain named-party status, pursuant to the virtual-representation doctrine.  *See id.* at 722; *BJVSD Bird Family P'ship, L.P. v. Star Elec., L.L.C.*, 413 S.W.3d 780, 784 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (holding

---

[3] As the supreme court noted, the term "intervene" is misleading "[b]ecause one who is virtually represented is already deemed to be a party, [and] theoretically it is not required to intervene in order to appeal."  *In re Lumbermens Mut. Cas. Co.*, 184 S.W.3d 718, 722 (Tex. 2006) (original proceeding) (internal quotations omitted).

that a limited partner could not assert virtual representation to appeal a judgment against the limited partnership when the limited partner cited no legal support for its contention that it would be bound by the judgment).

In the alternative, Brown asks that we consider her brief an amicus curiae brief pursuant to Rule 11 of the Texas Rules of Appellate Procedure. Rule 11 provides: "An appellate clerk may receive, but not file, an amicus curiae brief. But the court for good cause may refuse to consider the brief and order that it be returned." TEX. R. APP. P. 11. Cahill argues that we have good cause to refuse the brief because Brown's brief is meant as a substitute for Jones-Cahill's brief. We agree with Cahill and, accordingly, do not consider Brown's brief as an amicus curiae brief. *See Rahman v. Discover Bank*, No. 02-19-00182-CV, 2020 WL 2202450, at *2 n.1 (Tex. App.—Fort Worth May 7, 2020, no pet.) (per curiam) (mem. op.) (denying a request by a non-lawyer to file an amicus curiae brief on behalf of a pro se appellant whose brief was deficient because "the proposed brief would function as advocacy on [the appellant's] behalf and would be the equivalent of an appellant's brief."); *see also Johnson v. Conner*, No. 07-11-00055-CV, 2011 WL 3587425, at *2 (Tex. App.—Amarillo Aug. 16, 2011, no pet.) (mem. op.) ("An *amicus curiae* is a 'bystander' whose mission is to aid the court, to act only for the benefit of the court.").

Accordingly, we consider only the arguments presented by Cahill and Jones-Cahill in their briefs.

### THE ARBITRATOR'S DECISION

Cahill challenges only certain portions of the arbitrator's decision as exceeding the arbitrator's authority. As mentioned, both parties look to the premarital agreement to determine the extent of the arbitrator's authority. Cahill argues that the trial court should have vacated the decision as it relates to provisions that impact the limited partnership owned by Cahill and Cahill-Jones.

At the time Cahill filed his petition for divorce, Cahill and Jones-Cahill jointly owned a limited partnership and two closely held companies: (1) D&F Resources, Ltd. ("D&F"), which is an oil and gas partnership, (2) Denflo Enterprises, Inc. ("Denflo"), and (3) Renovatio Creations, LLC ("Renovatio Creations"). At the time of arbitration, Cahill owned seventy percent of D&F, while Jones-Cahill owned twenty percent. Nine percent of D&F was owned by an irrevocable trust, and D&F's general partner, Denflo owned one percent. As to Denflo, Cahill owned ninety percent, and Cahill-Jones owned the other ten percent. Cahill and Jones-Cahill owned Renovatio Creations equally.

In accordance with the premarital agreement, the arbitrator awarded to Jones-Cahill a twenty percent interest in D&F, a ten percent interest in Denflo, and a fifty percent interest in Renovatio Creations. Cahill does not contest these awards; however, he contends that the arbitrator's clarifications exceeded the arbitrator's authority because the clarifications increased Jones-Cahill's ownership of D&F beyond the twenty percent she was entitled to, under the premarital agreement. In a section of "[f]urther rulings" regarding Jones-Cahill's ownership interest in D&F, Denflo, and Renovatio Creations, the arbitrator ruled that Jones-Cahill's "D&F capital account shall be adjusted and corrected to $164,560.00" and "[Cahill] shall pay to [Jones-Cahill] $200,000.00." The arbitrator based the adjustments on factors including, "[i]tems improperly charged to [Jones-Cahill's] D&F capital account; correction of amounts due to [Jones-Cahill] based upon her increasing ownership interest in D&F during the marriage; [and] loans made using [Jones-Cahill's] D&F interest without her consent."

The arbitrator also clarified: "On and after June 8, 2019, 20% of the net mineral income, as defined herein, of D&F shall be paid by [Cahill], through D&F, to Shirley in periodic payments not less frequent than monthly . . . ." The arbitrator ruled additionally that Jones-Cahill would not

be liable to Cahill for past debts of D&F or for future D&F debts, unless she expressly consented.

The arbitrator further prohibited Cahill from taking actions adverse to Jones-Cahill, as follows:

> [Cahill] controls Denflo, D&F and Renovatio Creations. It is ordered that [Cahill] shall use his best faith efforts to in all ways comply with this ruling, and shall take no action, at any time after June 8, 2019, individually or through entities owned or otherwise controlled by [Cahill] currently or in the future, to diminish [Jones-Cahill's] rights as set out in this ruling . . . nor to diminish the existing D&F mineral interests which produce D&F net mineral income. Further, [Cahill] shall not make or allow changes to D&F, Denflo[] or Renovatio Creations which would allow other persons or entities to diminish [Jones-Cahill's] said rights, or to diminish said existing D&F mineral interests. Therefore, any future transactions taken or authorized by [Cahill] which affect [Jones-Cahill's] D&F interest, [Jones-Cahill's] Denflo interest or [Jones-Cahill's Renovatio Creations] interest shall include requirements to protect said interests of [Jones-Cahill] as set out in this ruling. Further, [Cahill] is specifically prohibited from disposing of or encumbering [Jones-Cahill's] D&F interest, [Jones-Cahill's] Denflo interest or [Jones-Cahill's Renovatio Creations's] interest, including without limitation by loans, investments or discretionary decisions, without the express, written consent of [Jones-Cahill.]

In support of these rulings, the arbitrator cited the premarital agreement and the creation agreements for the partnership and companies. According to the arbitrator, the premarital agreement and the D&F limited partnership agreement "vary significantly regarding which party has control of [Jones-Cahill's] 20% interest in D&F." The arbitrator wrote:

> While the D&F Agreement vests control in [Cahill], by virtue of his control of Denflo and his majority interest in D&F, the [premarital agreement] provides in multiple provisions that the owner of separate property of a spouse shall have full control of that spouse's separate property, and the other spouse shall not dispose of or encumber the separate property of the other spouse without that spouse's express consent. Interpreting the contracts in a manner which gives the D&F Agreement (or the Denflo or Renovatio Creations entity documents) precedence over the [premarital agreement's] intent and express language on this issue would result in [Cahill] having the authority to dispose of and encumber [Jones-Cahill's] D&F interest (and [Jones-Cahill's] Denflo interest and [Jones-Cahill's Renovatio Creations] interest) in a manner that could extinguish, by his discretionary control and actions, the value of her interests; which the arbitrator finds is not the intent of the parties in executing the agreements and would not be a tenable or just interpretation. Therefore, while the D&F Agreement (and the Denflo and Renovatio Creations entity documents) will continue to provide structure on issues other than control of [Jones-Cahill's] D&F Interest, [Jones-Cahill's] Denflo interest and [Jones-Cahill's] Renovatio Creations interest, interpreting the agreements together the following rulings are made to provide [Jones-Cahill] the control of her

D&F interest (and Denflo and Renovatio Creations interests) as provided in the [premarital agreement], as carried out by these rulings: . . . .

Cahill argues that, by these clarifications, the arbitrator exceeded his powers because he (1) directed the conduct of non-parties (D&F, Denflo, Renovatio Creations, and the Cahill Trust), (2) decided matters beyond those submitted to him through the arbitration clause in the premarital agreement, and (3) granted relief beyond that allowed by the premarital agreement.

We review a trial court's decision to confirm or vacate an arbitration award under a de novo standard of review. *Shah v. Star Anesthesia, P.A.*, 580 S.W.3d 260, 267 (Tex. App.—San Antonio 2019, no pet.). The premarital agreement provides for binding arbitration in accordance with the Texas General Arbitration Act ("TAA"). *See* TEX. CIV. PRAC. & REM. CODE §§ 171.001–.098.[4] "Because Texas law favors arbitration, judicial review of an arbitration award is extraordinarily narrow." *E. Tex. Salt Water Disposal Co., Inc. v. Werline*, 307 S.W.3d 267, 271 (Tex. 2010). Under the TAA, "a party may avoid confirmation only by demonstrating a ground expressly listed in section 171.088." *Hoskins v. Hoskins*, 497 S.W.3d 490, 495 (Tex. 2016). Section 171.088(a)(3)(A) requires vacatur of an arbitration decision if the arbitrators "exceeded their powers." TEX. CIV. PRAC. & REM. CODE §§ 171.088(a)(3)(A).

"To ensure arbitration awards are afforded the same effect as the judgment of a court of last resort, all reasonable presumptions are indulged in favor of the award, and none against it." *Shah*, 580 S.W.3d at 265 (internal quotations omitted). A party seeking to vacate an arbitration award bears the burden of presenting a complete record that establishes grounds for vacatur. *Id.*

---

[4] The arbitration provision in the premarital agreement provides: "The provisions for binding arbitration must be made in accordance with Texas arbitration law . . . ." Based on this provision, we apply the TAA to our analysis. However, we look to cases regarding the Federal Arbitration Act ("FAA") as persuasive. "Texas and federal vacatur standards do not significantly differ," *Vantage Deepwater Co. v. Petrobras Am., Inc.*, 966 F.3d 361, 375 n.2 (5th Cir. 2020), and Cahill argues that the challenged provisions of the arbitrator's decision must be vacated "under either the TAA or FAA." *See also Robinson v. Home Owners Mgmt. Enterprises, Inc.*, 590 S.W.3d 518, 526 n.31 (Tex. 2019) (noting the TAA grounds for vacatur of arbitral award are similar, but not identical, to those in the FAA).

When, as here, there is no transcript of the arbitration hearing, appellate courts presume the evidence was adequate to support the award. *Id*.

Cahill first complains that the arbitrator's decision "is directed to and affects nonparties to the premarital agreement and the arbitration proceeding." According to Cahill, the capital-account adjustments, the payment of mineral income, and the division of partnership debt require action by D&F and its general partner, Denflo, and these actions will affect the funds that can be distributed to all owners, including D&F, Denflo, and the irrevocable trust that owns nine percent of D&F. In support, Cahill cites cases that stand for the proposition that an arbitrator exceeds his authority by determining the obligations of entities that are not parties to arbitration agreements or arbitration proceedings. *See Orion Shipping & Trading Co. v. E. States Petroleum Corp. of Panama, S.A.*, 312 F.2d 299, 300–01 (2d Cir. 1963) (vacating the portion of an arbitration award that held an entity liable as a guarantor because that entity was not a party to the arbitration proceeding); *NCR Corp. v. Sac-Co.*, 43 F.3d 1076, 1080 (6th Cir. 1995) (noting that the parties agreed "that the arbitrator exceeded his powers when he awarded punitive damages to nonparties"). However, unlike in those cases, the arbitrator's award, here, does not purport to bind or benefit non-parties. Instead, it imposes obligations upon Cahill that he can carry out based upon the arbitrator's determination that Cahill controls Denflo, D&F and Renovatio Creations. Cahill cites no authority for his sweeping argument that an arbitrator exceeds his authority whenever his decision *affects* a non-party.

Cahill's remaining arguments are variations of a broader argument that the arbitrator incorrectly interpreted the provisions of the premarital agreement. First, Cahill argues that Jones-Cahill agreed through the premarital agreement that she would not take any legal action or seek any legal relief that "would in any way restrict, inhibit, or affect" D&F and Denflo "from operating their business affairs as each entity deems appropriate." According to Cahill, the arbitrator's

decision regarding adjustment of the D&F capital account, D&F's payment of mineral income, and the division of D&F's debt violate this contract provision. Likewise, Cahill argues that the premarital agreement both establishes there will be no marital estate and prohibits each spouse from encumbering or disposing of the other's separate property. According to Cahill, the arbitrator's order that he pay Jones-Cahill and that the D&F capital account be adjusted and liability for debt assigned requires a disposition of his separate property and D&F's property. Cahill also argues that the arbitrator granted relief greater than that allowed by the premarital agreement because the arbitrator's clarifications of Jones-Cahill's ownership interests awarded Jones-Cahill more than the percentage of ownership she was entitled to under the premarital agreement.

However, as the arbitrator explained in his decision, these cited provisions from the premarital agreement and others can support the decision. Under the arbitrator's interpretation of the premarital agreement, provisions that "the owner of separate property of a spouse shall have full control of that spouse's separate property, and the other spouse shall not dispose of or encumber the separate property of the other spouse without that spouse's express consent" allows for the clarifications. In the arbitrator's view, the clarifications are consistent with the premarital agreement because they prevent Cahill from disposing of or encumbering Jones-Cahill's interests "in a manner that could extinguish, by [Cahill's] discretionary control and actions, the value of [Jones-Cahill's] interests."

Whether the arbitrator's contract interpretation is correct is inapposite. Under the TAA, "[a]rbitrators exceed their powers if they lack the authority to decide the issues adjudicated in the arbitration award; arbitrators do not exceed their authority by erroneously deciding an issue." *Ctr. Rose Partners, Ltd. v. Bailey*, 587 S.W.3d 514, 527–28 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (citing *Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 518 S.W.3d 422, 431–32 (Tex.

2017)). Similarly, under the Federal Arbitration Act ("FAA"), which allows for vacatur of an arbitration award "where the arbitrators exceeded their powers," 9 U.S.C.A. § 10(a)(4), "the Supreme Court has made clear that district courts' review of arbitrators' awards under § 10(a)(4) is limited to the 'sole question … [of] whether the arbitrator (even arguably) interpreted the parties' contract.'" *BNSF R. Co. v. Alstom Transp., Inc.*, 777 F.3d 785, 788 (5th Cir. 2015) (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013)); *see also Denbury Onshore, LLC v. Texcal Energy S. Tex., L.P.*, 513 S.W.3d 511, 520 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("Contentions that the arbitrator's reasoning was legally erroneous or internally inconsistent, or that the arbitrator misinterpreted the contract or misapplied the law do not provide a basis for vacating an award [under the TAA or FAA].").

Here, the deferential standard is met. The arbitrator interpreted the parties' premarital agreement to allow certain clarifications to preserve Jones-Cahill's ownership interests in D&F, Denflo, and Renovatio Creations as her separate property, and to preserve her control of that separate property free from encumbrances. This interpretation is plausibly supported by the premarital agreement, and the arbitrator explained his decision as effectuating the parties' intent as expressed in the premarital agreement. Because the parties bargained for the arbitrator's binding resolution of "any dispute or controversy regarding the validity, interpretation, or enforceability of [the premarital] agreement, as well as all issues involving its enforcement," the arbitrator's decision which arguably construes and applies the premarital agreement must stand. *See Oxford Health*, 569 U.S. at 569 ("Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." (citation and internal quotations omitted); *see also BNSF R. Co.*, 777 F.3d at 789 ("That we might interpret the Agreement differently than the

[Arbitration] Panel is entirely beside the point because it is not our interpretation that the parties bargained for.").

## CONCLUSION

We affirm the trial court's order confirming the arbitrator's decision and denying Cahill's motion to vacate.

Irene Rios, Justice