COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  | § |  |
| --- | --- | --- |
| IN RE | § | No. 08-23-00223-CV |
| ARCH INSURANCE COMPANY, | § | AN ORIGINAL PROCEEDING |
| Relator. | § | IN MANDAMUS |
|  | § |  |

## MEMORANDUM OPINION

Relator Arch Insurance Company (Arch) sought to intervene in a proceeding in which its insured Anadarko Petroleum Corporation (Anadarko) is being sued by a plaintiff for bodily injuries she suffered in an explosion at Anadarko's natural gas processing plant in Reeves County. After the trial court granted Anadarko's motion to strike the intervention, Arch filed a petition for mandamus with this Court, challenging the trial court's decision. For the reasons set forth below, we deny the petition.

### FACTUAL AND PROCEDURAL BACKGROUND

#### A. The Underlying Lawsuit in Reeves County

The plaintiffs in the underlying lawsuit, Rita Candelario (Candelario) and her now-deceased husband, Cristobal Candelario, filed a lawsuit in the Reeves County district court on October 23, 2017, alleging she was injured in an explosion at Anadarko's natural gas processing

plant[1] in December of 2015. According to the petition, at the time of the explosion, ~~she~~ Candelario was an employee of a temporary security staffing company—Guard 1 Services, LLC (Guard 1), which provides staffing to the energy industry. The petition named Western Gas, Anadarko, Guard 1, and John Doe (an employee of either Anadarko or Western Gas who allegedly caused the explosion) as defendants.

Prior to the explosion, Arch had issued a commercial general liability (CGL) policy to Guard 1—with Anadarko as an additional insured—and pursuant to the CGL policy's "duty to defend" provisions, Arch agreed to represent both parties in the lawsuit "subject to a full and complete reservation of rights."

On March 23, 2018, Guard 1 moved for summary judgment, seeking dismissal of the claims against it under the exclusive-remedy provision in the Workers' Compensation Act. The exclusive-remedy provision provides that "[r]ecovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage . . . against the employer . . . for the death of or a work-related injury sustained by the employee." *See* TEX. LAB. CODE ANN § 408.001(a). Guard 1 had a workers' compensation insurance policy for its employees under which Candelario was admittedly receiving benefits, and Guard 1 argued that the exclusive-remedy provision therefore prohibited Candelario from bringing her claims against it. *See Mo-Vac Serv. Co., Inc. v. Escobedo*, 603 S.W.3d 119, 124 (Tex. 2020) (recognizing that the Workers' Compensation Act "prohibits employees from seeking common-law remedies from their employers by making workers' compensation benefits an injured

---

[1] According to the Candelarios' petition, the plant was "under the operational direction, control, and supervision of Defendant Western Gas Partners LP. d/b/a Delaware Basin Midstream, LLC. [(Western Gas)]," and "Anadarko Petroleum Corporation was in contractual and actual control of the [plant]." The parties refer to the plant as "Anadarko's plant."

employee's exclusive remedy"). Shortly thereafter, Candelario voluntarily dismissed Guard 1 from its lawsuit.

Thereafter, by a letter dated October 30, 2019, Arch sought to compel Anadarko to file a similar motion for summary judgment, asserting that Candelario was Anadarko's employee under a borrowed-servant theory and that her claims against Anadarko should therefore be dismissed under the Workers' Compensation Act's exclusive-remedy provision. On January 7, 2020, Anadarko's attorney informed Arch that it would not file the motion, as it believed Candelario was not its employee, at least for purposes of the Workers' Compensation Act.[2]

## B. Arch's Declaratory-Judgment Actions in Two Other Courts

Soon after, Arch filed a lawsuit in the United States District Court for the Western District of Texas, Pecos Division (PE:20-CV-00036-DC-DF)**,** naming the Candelarios as defendants and asking the court for a declaratory judgment that Candelario was Anadarko's employee under the borrowed-servant theory and that her claims were barred by the Workers' Compensation Act's exclusive-remedy provision. However, in February of 2021, the district court dismissed the lawsuit for lack of a justiciable controversy, recognizing that although it could determine insurance policy coverage questions, as those present an actual controversy between a plaintiff injured by an insured and an insurance company attempting to deny coverage, it had no authority to determine "liability" issues, such as whether a plaintiff was an employee of an insured for purposes of applying the Workers' Compensation Act. *Arch Ins. Co. v. Candelario*, No. P:20-CV-00036-DC, 2021 WL 2193983, at *3–4 (W.D. Tex.), *reconsideration denied*, No. P:20-CV-00036-DC, 2021 WL 8053524 (W.D. Tex. Sept. 10, 2021) *and appeal dismissed*, No. 21-50955, 2021 WL 8013947 (5th

---

[2] The parties do not dispute that Guard 1 and Anadarko had a master service agreement in which both parties agreed to maintain workers' compensation insurance for all their employees, to include a borrowed-servant endorsement. However, Anadarko claimed that Candelario did not fit within the meaning of that term.

Cir. Dec. 22, 2021) (citing *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 274 (1941) (holding that the insurer established a case and controversy between itself and the state court plaintiff, who sued the insured in state court, where the insurer asked the court to interpret the policy it issued to the insured)).

Arch then filed a lawsuit in a Harris County district court, seeking an administrative remedy, naming Anadarko, Western Gas, and Rita Candelario as defendants and seeking the same relief, i.e., a judicial declaration that Anadarko was Candelario's employer under a borrowed-servant theory and that the Workers' Compensation Act's exclusive-remedy provision prohibited Candelario from bringing her lawsuit against Anadarko. In the meantime, the Reeves County district court stayed the underlying proceedings in its court, while the Harris County lawsuit was pending.

At an October 2022 hearing in the Harris County court, Arch's attorney argued that seeking an administrative remedy was its only avenue for obtaining a ruling on the exclusive-remedy bar, acknowledging that Arch could not be considered a party to the underlying lawsuit in Reeves County as an insurer, and that Arch had no right to direct Anadarko to raise an affirmative defense it did not wish to raise.[3] She then argued that if the exclusive-remedy provision barred Candelario's lawsuit as a matter of law—due to her status as a borrowed employee—then Arch had no duty to defend or indemnify Anadarko. And in turn, she argued that Arch should not be required to continue to incur costs to defend a lawsuit that should be dismissed. After the court expressed concern that Arch was asking it to resolve a fact issue in the underlying lawsuit—i.e.,

---

[3] As Arch's attorney recognized at the hearing, the Rules of Civil Procedure prohibit the joinder of an insurance company as a party in a tort case, except in limited circumstances not at issue here. TEX. R. CIV. P. 51(b) (*see In re Essex Ins. Co.*, 450 S.W.3d 524, 525 (Tex. 2014) (recognizing that "[i]n Texas, the general rule . . . is that an injured party cannot sue the tortfeasor's insurer directly until the tortfeasor's liability has been finally determined by agreement or judgment.")).

whether Candelario was a borrowed servant in a dual-employment relationship with Guard 1 and Anadarko—it issued an order dated October 11, 2022, dismissing this lawsuit for "want of jurisdiction."

### C. Arch's Petition in Intervention and its Dispositive Motions

Arch filed its petition in intervention with the Reeves County court on October 18, 2022, asserting that it was in fact a proper party to the proceedings. In its petition, Arch requested a declaratory judgment on its right to intervene and its right to obtain a judgment on the issues of Candelario's status as a borrowed employee and whether the exclusive-remedy provision therefore barred her lawsuit. Arch further asked the trial court to extend the stay of the trial proceedings until it ruled on its petition in intervention and request for declaratory judgment, but requested that it lift its stay in the action to resolve the two dispositive motions it filed as an intervenor (a motion for summary judgment as well as a plea to the jurisdiction and motion to dismiss for lack of jurisdiction) seeking dismissal of Candelario's lawsuit.

Anadarko filed its motion to strike the intervention, asserting that Arch had no justiciable interest in the case. The trial court granted the motion to strike without stating its reasons. Arch then filed a motion asking the trial court to enter a "final judgment" on the issue of its right to intervene and to sever the judgment from Candelarios' lawsuit; additionally, it asked the trial court to stay the proceedings so it could appeal the requested final judgment. It appears that Arch's motion was denied by operation of law.

### D. The Pending Federal Case for Breach of the Duty to Cooperate

Arch then filed yet another lawsuit, this time in the United States District Court for the Southern District of Texas, Houston Division (Civil Action No. 4:23-CV-01267), in which it asked the district court to declare that Anadarko's refusal to assert the affirmative defense of the

Workers' Compensation Act's exclusive-remedy bar in the Reeves County litigation was a "breach of the cooperation clause" in the parties' CGL policy, which voided coverage for any judgment arising from that litigation. The federal court issued an order setting a trial conference for July 6, 2023, and Arch contends the federal court has since informed Arch that it could not reach the merits of its claim prior to the December 11, 2023 trial setting in Reeves County.

### E. Arch's Mandamus Petition

Arch contends it is entitled to mandamus relief, arguing that the trial court abused its discretion in granting Anadarko's motion to strike its petition in intervention and in refusing to find that Candelario's lawsuit was barred by the exclusive-remedy provision.[4] For the reasons set forth below, we conclude that Arch is not entitled to the mandamus relief it has requested.

## STANDARD OF REVIEW

Mandamus is an extraordinary remedy available "only in situations involving manifest and urgent necessity and not for grievances that may be addressed by other remedies." *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992) (orig. proceeding) (internal quotation marks omitted). Thus, mandamus will issue "only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law."[5] *In re State Farm Mut. Auto. Ins. Co.*, 629 S.W.3d 866, 872 (Tex. 2021) (quoting *Walker*, 827 S.W.2d at 839) (internal quotation

---

[4] In its petition, Arch initially asserted that it was also challenging the trial court's refusal to issue a final judgment on the question of its right to intervene in the lawsuit from which Arch believes it would have been entitled to appeal. As Anadarko points out, however, Arch does not brief this issue, and Arch has therefore waived it. We agree and do not address it in our analysis. *See* TEX. R. APP. P. 52.3(h) ("The petition must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the appendix or record.").

[5] We recognize that an order striking a petition in intervention may not be appealed by the intervenor before the rendition of a final judgment. *See Hometown Bank, N.A. v. City of Tex. City*, No. 14-21-00043-CV, 2022 WL 17491676, at *2 (Tex. App.—Houston [14th Dist.] Dec. 8, 2022, no pet.) (mem. op.) (granting the City's motion to dismiss an appeal from the trial court's order striking appellant's petition in intervention, as such an order was not an appealable interlocutory order). However, as explained below, we find that Arch has other legal remedies available to it to have its coverage obligations determined.

6

marks omitted); *see also In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 207 (Tex. 2009) (recognizing same).

"A trial court abuses its discretion when its 'ruling is arbitrary and unreasonable, made without regard for guiding legal principles or supporting evidence.'" *In re State Farm.*, 629 S.W.3d at 872 (quoting *In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 712 (Tex. 2016) (orig. proceeding)). A "trial court has no 'discretion' in determining what the law is or applying the law to the facts[,]" and therefore, "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ." *Walker*, 827 S.W.2d at 840 (citing *Joachim v. Chambers*, 815 S.W.2d 234, 240 (Tex.1991) (trial court abused its discretion by misinterpreting the Code of Judicial Conduct).

In determining whether a relator has an adequate remedy at law through other legal remedies, an appellate court must balance the "benefits of mandamus review against its detriments." *In re State Farm.*, 629 S.W.3d at 872 (quoting *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding)). A remedy is not "inadequate" merely because it may involve more expense or delay than obtaining an extraordinary writ. *See Walker*, 827 S.W.2d at 842; *see also In re GTG Sols., Inc.*, 642 S.W.3d 41, 44 (Tex. App.—El Paso 2021, orig. proceeding) (recognizing same). Instead, mandamus relief is reserved for the exceptional cases in which conducting a trial or complying with a trial court's order would result in a "gross and unnecessary waste of economic and judicial resources." *See In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 298 (Tex. 2016) (orig. proceeding) (internal quotation marks omitted). Thus, the possibility that a petitioner would be forced to endure the "'hardship' of a full-blown trial if we decline to issue a writ of mandamus is, in itself, not sufficient to dictate mandamus relief." *In re Entergy Corp.*, 142 S.W.3d 316, 321 (Tex. 2004) (orig. proceeding). Rather, "[t]he most frequent

use [courts] have made of mandamus relief involves cases in which the very act of proceeding to trial—regardless of the outcome—would defeat the substantive right involved." *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 465 (Tex. 2008) (orig. proceeding).

## ANALYSIS

### A. The trial court did not abuse its discretion in granting the motion to strike.

Rule 60 of the Texas Rule of Civil Procedure provides that "[a]ny party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." TEX. R. CIV. P. 60. When a party is challenging a trial court's decision to strike a party's intervention under Rule 60, we review the trial court's decision under an abuse-of-discretion standard. *Williamson v. Howard*, 554 S.W.3d 59, 66 (Tex. App.—El Paso 2018, no pet.) (citing *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990)); *see also In re Lumbermens Mut. Cas. Co.*, 184 S.W.3d 718, 722 (Tex. 2006) (recognizing that an appellate court reviews a trial court's decision on a motion to strike an intervention for abuse of discretion). And when, as here, the trial court's order does not specify the grounds for granting the motion to strike, we can affirm on any legal theory that supports the order. *See In re Estate of Webb*, 266 S.W.3d 544, 551 n.24 (Tex. App.—Fort Worth 2008, pet. denied) (citing *Point Lookout W., Inc. v. Whorton,* 742 S.W.2d 277, 279 (Tex. 1987)).

In general, Rule 60 authorizes a party with a justiciable interest in a pending lawsuit to intervene in the suit as a matter of right, subject to a trial court's finding of "sufficient cause" to strike the intervention. *See Nghiem v. Sajib*, 567 S.W.3d 718, 721 n.14 (Tex. 2019) (citing *In re Union Carbide Corp.*, 273 S.W.3d 152, 154 (Tex. 2008) (per curiam) (orig. proceeding)). Thus, an intervenor is not required to obtain the court's permission prior to intervening; instead, the party opposing the intervention has the burden to challenge it by a motion to strike. *Id.* And in turn, once

8

a motion to strike is filed, an intervenor has the burden to show it has a justiciable interest in the pending suit. *In re Union Carbide Corp.*, 273 S.W.3d at 155 (citing *Mendez v. Brewer*, 626 S.W.2d 498, 499 (Tex. 1982)). Under Rule 60, a person or entity has a justiciable interest—and therefore the right to intervene—"if the intervenor could have brought the same action, or any part thereof, in his own name, or, if the action had been brought against him, he would be able to defeat recovery, or some part thereof." *Guar. Fed. Sav. Bank*, 793 S.W.2d at 657; *see also Williamson*, 554 S.W.3d at 66 (recognizing that a "justiciable interest is analogous to an interest that is 'essential for a party to maintain or defend an action'" (quoting *McCord v. Watts*, 777 S.W.2d 809, 811 (Tex. App.—Austin 1989, no writ))).

In arguing that it has a justiciable interest in the pending litigation, Arch relies primarily on the Texas Supreme Court's holding in *In re Lumbermens Mut. Cas. Co.* for the proposition that an insurer may, in some instances, be entitled to intervene in a proceeding in which its insured is being sued to raise a defense that its insured has refused to bring.[6] In *Lumbermens*, an insurer sought to intervene in an appeal in which its insured was challenging a $20 million judgment due to the fact that the insured was refusing to raise a choice-of-law issue that it had raised in the trial court, which the insurer believed was dispositive of the appeal. 184 S.W.3d at 721–22. In finding that the court of appeals abused its discretion in refusing to permit the intervention, the Texas Supreme Court applied the virtual-representation doctrine, finding that because the insurer would

---

[6] Arch also cites a series of out-of-state cases wherein courts have allowed an insurer to intervene in a pending lawsuit in which its insured has been sued, but these cases involve situations in which the insured has demonstrated that it was either unable or unwilling to defend itself, or the insured had allowed the plaintiff to take a default judgment against it. *See, e.g.*, *W. Heritage Ins. Co. v. Superior Court*, 199 Cal. App. 4th 1196, 1207–08, 132 Cal. Rptr. 3d 209, 218–19 (2011) (recognizing an insurer's right to intervene in lawsuit after a default judgment was entered against its insured); *Guar. Nat. Ins. Co. v. Pittman*, 501 So. 2d 377, 380, 383 (Miss. 1987) (allowing insurer to intervene where default judgment was taken against insured and insured made no effort to appeal from the trial court's denial of its motion to vacate the default judgment). We find these cases to be inapposite to the current situation in which Andarko is presenting a defense to Candelario's lawsuit—just not the defense that Arch would like it to present.

9

be bound by the judgment being appealed, and because it had an identical interest in the judgment as the insured, the insurer had the right to intervene as a party in the appeal. *Id*. at 722–25; *see also Kenneth D. Eichner, P.C. v. Dominguez*, 623 S.W.3d 358, 362 n.3 (Tex. 2021) (explaining that the doctrine of virtual representation provides an exception to the general rule that only a named party may bring an appeal and allows a person or entity to qualify as a party if it can appeal when a judgment has been entered to which it is bound).

Unlike the situation in *Lumbermens*, however, Arch is not attempting to invoke the virtual-representation doctrine to intervene in an appellate proceeding and is instead attempting to intervene in a trial court proceeding where liability is at issue, but it has provided no authority for its right to do so. Moreover, even if we were to conclude that Arch has a justiciable interest in the pending liability lawsuit, this would not end our inquiry. It is well-established that regardless of whether a party has a justiciable interest in a proceeding, a court still has the discretion to find "sufficient cause" under Rule 60 for striking a petition when there has been a significant and unexplained delay in filing the petition that would prejudice the parties by delaying the proceedings and/or when the intervention would unjustifiably complicate the case. *See Farmers Group, Inc. v. Geter*, 620 S.W.3d 702, 714 n.12 (Tex. 2021) (in determining whether to grant a motion to strike for untimeliness, a trial court may consider whether a long delay in asserting a petition in intervention would prejudice the other parties, such as by delaying a trial date); *see also Muller v. Stewart Title Guar. Co.*, 525 S.W.3d 859, 873–74 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (recognizing that a court has the discretion to find "sufficient cause" under Rule 60 to strike a petition in intervention when there has been a significant and unexplained delay in filing the petition that would delay the proceedings or when the intervention would unjustifiably "complicate the case"); *Tex. Mut. Ins. Co. v. Olivas*, 323 S.W.3d 266, 276, 278 (Tex. App.—El

10

Paso 2010, no pet.) (recognizing that although there is no deadline for filing a petition in intervention, a trial court has the discretion to grant a motion to strike a petition in intervention when it finds that the intervention would "cause unnecessary delay in the case and unnecessary prejudice" to the parties in the case).

In *Lumbermens*, after concluding the insurer had a justiciable interest in intervening in its insured's appeal, the court found it necessary to determine whether the insurer had timely filed its petition. 184 S.W.3d at 726. In concluding the petition was timely filed, the court found it significant that the insurer intervened only ten weeks after it came to light that its insured did not intend to raise the choice-of-law argument in its appellate briefing, where the insurer explained that the delay was due to the uncertainty in the law regarding its right to intervene on appeal. *Id.* at 726–27. And the court further found it significant that while the opposing parties would not suffer any prejudice from the slight delay in allowing the insurer to file briefs on the issue, the insurer stood to suffer "obvious and severe" prejudice if it was not permitted to intervene. *Id.* at 727. In assessing the prejudice, the court referred to the "unique" procedural posture in that case, including the fact that the insurer had posted a $29 million appellate bond and the fact that it would be immediately required to pay the judgment pursuant to that bond if the appeal failed. *Id.* at 722, 725.

In contrast, the record here establishes that Arch waited over two-and-a-half years to file its petition in intervention after being expressly informed by Anadarko in January of 2020 that it did not intend to raise the exclusive-remedy bar as an affirmative defense in Candelario's lawsuit. Various courts have found that similar—and even shorter—delays in filing a petition to intervene justify striking the petition. *See, e.g.*, *Muller.*, 525 S.W.3d at 874 (the trial court did not abuse its discretion by striking a petition in intervention that was filed 20 months after plaintiff filed his

11

lawsuit); *Armstrong v. Tidelands Life Ins. Co.*, 466 S.W.2d 407, 412 (Tex. Civ. App.—Corpus Christi 1971, no writ) (trial court did not abuse its discretion in granting a motion to strike where intervenors waited approximately three years and nine months after suit was filed and after a dispositive motion for summary judgment was set for hearing before attempting to intervene in the case); *Roberson v. Roberson*, 420 S.W.2d 495, 499 (Tex. Civ. App.—Houston [14th Dist.] 1967, writ ref'd n.r.e.) (trial court properly struck a petition in intervention filed two years after divorce proceeding was instituted); *Westridge Villa Apartments v. Lakewood Bank & Tr. Co.*, 438 S.W.2d 891, 895 (Tex. App.—Fort Worth 1969, writ ref'd n.r.e.) (determining that the intervention was not timely when intervenor had knowledge of the appellee's pending garnishment suit for at least eight months prior to its attempt to intervene, intervenor did not intervene until the case had been called to trial, and intervenor presented no evidence to explain the delay). Moreover, as Anadarko points out, while Arch pursued other remedies to address the issue of Candelario's employment status, the trial court stayed Candelario's lawsuit, causing multiple delays in having her case heard. And as Arch itself recognizes, allowing it to intervene will necessitate yet another stay of the trial proceedings of Candelario's case, which has been pending for six years, thereby causing prejudice to the true parties in the case. *Id*.

And finally, other than contending it will incur potentially unnecessary expenses and costs if it is required to continue to defend Anadarko in the underlying lawsuit, Arch has not explained how it will suffer any significant prejudice by having to wait for a determination on its duty to indemnify following trial if and when a judgment is entered against its insured. In fact, when as here, an insurer has agreed to undertake the defense of its insured under the "duty to defend" provision in its CGL policy, the insurer's duty to indemnify is generally not established until after the trial is completed and the jury has entered a judgment against the insured in the underlying

12

litigation.[7] *See D.R. Horton-Tex., Ltd. v. Markel Intern. Ins. Co., Ltd.*, 300 S.W.3d 740, 744–45 (Tex. 2009) (recognizing that the duty to defend arises from a review of the plaintiff's pleadings and the terms of the CGL policy while the duty to indemnify cannot be determined until after the underlying litigation has concluded and the insured's liability has been adjudicated, in part because the issue of indemnification "may turn on facts actually proven in the underlying lawsuit"); *see also In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 271 (Tex. 2021) (recognizing that in general, the duty to indemnify "arises only after an insured's legal responsibility for covered damages has been established by judgment or settlement"). And as Anadarko points out, if the jury enters a judgment against it, unlike the insurer in *Lumbermens*, which had posted an appellate bond to secure the judgment, Arch will not be required to pay the judgment immediately.

We therefore conclude that the trial court could have rationally determined that the equities weighed in favor of finding that Arch's lengthy and prejudicial delay in filing its petition in intervention constituted a "sufficient cause" for striking the petition under Rule 60.

**B. Arch has an adequate remedy at law.**

We also conclude that Arch has an adequate remedy at law to raise the issue of whether it has a duty to indemnify Anadarko if and when a judgment is entered against Anadarko, either in the pending federal case in which it sued Anadarko for breach of the cooperation clause in the CGL policy or in a separate coverage proceeding. *See id.* at 276 (recognizing that the facts necessary to establish that an insurer has a duty to indemnify its insured for a judgment "are not required to be proven in an underlying trial against the insured and are often proven in coverage litigation") (citing *D.R. Horton,* 300 S.W.3d at 744). In other words, Arch will not be deprived of

---

[7] Although Arch now appears to be contending it owes no duty to defend Andarko in the underlying litigation, this is an entirely separate issue from whether it has a right to intervene as a party in the case under Rule 60, and we therefore do not consider it in our analysis.

its substantive right to challenge the issue of whether it has a duty to indemnify Anadarko and may do so if and when a judgment is entered against Anadarko. Accordingly, we conclude Arch did not meet its burden of establishing that it lacks an adequate remedy at law to support its request for mandamus relief.

We therefore conclude that Arch did not meet its burden of establishing that the trial court's decision to strike its intervention constituted a clear abuse of discretion to support its request for mandamus relief.

## CONCLUSION

We deny the mandamus petition, and given our disposition of the petition, we deny as moot Arch's motion for a stay of the trial.


LISA J. SOTO, Justice

October 31, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.